EDWIN L. JONES, Associate Justice
(dissenting).
The appellant, Lorus Argie Young, alias Joe Young and Robert Williams, alias “Bobo” were convicted in the Criminal Court of Record in and for Polk County, Florida, on five counts of a six count information charging violation of the Lottery Statute, Section 849.09, Florida Statutes, F.S.A. Lorus Argie Young, alias Joe Young, has perfected an appeal here.
The first count charged the defendants with conspiracy to set up and conduct a lottery and to sell interests in a lottery commonly known as “Cuba” and a lottery commonly known as “bolita” and by means of said lottery to dispose of money by the distribution of interests therein and by unlawfully promoting, setting up and conducting said lotteries in said county. The sixth count charged the defendants with possession of implements and devices for conducting a lottery for money, to-wit: tickets, books and an adding machine. On these counts one and six, the defendants were sentenced to serve one year in the -County Jail of Polk County. Since these counts charge only misdemeanors this Court has no jurisdiction to review the appellant’s conviction under them.. Article 5, Sections 5 and 11, -Constitution of Florida, F.S.A.; Section 924.08, Florida Statutes, F.S.A. The mere fact that felony and misdemean- or, each constituting a separate and distinct offense were -charged in the same information and that both charges were tried at the same time and before the same jury, can make no difference as to determining appellate jurisdiction to review such convictions, Wood v. State, 153 Fla. 888, 16 So.2d 107.
The defendants were acquitted of the third count in which they were charged with selling tickets in said lottery.
The second count charged the defendants with unlawfully setting up and promoting a lottery for money; the fourth count charged them with unlawfully conducting a lottery for money and by means of a lottery, disposing of money; the fifth count charged the defendants with being unlawfully interested in and connected with a certain lottery commonly known as bolita and Cuba, by then and there unlawfully having in his possession certain books, records and accounts -containing and showing the shares and interests sold by the said Robert Williams, alias “Bobo”, and Lorus Argie Young, alias Joe Young, in the aforesaid lottery, and that they did then and there have in their possession large sums of money and currency of the United States, and which said books, accounts, money and currency as aforesaid, were evidence of an interest in a lottery, scheme or device not played.
In his eighth ground of appeal, the appellant objects to the introduction of evidence resulting from a search of his dwelling. The search was made under a valid search warrant. The affidavits upon which *764 the search warrant was issued, contain sufficient positive and direct statements made by both affiants to constitute probable cause for the issuance of said warrant. The fact that the search warrant was not placed in evidence before the introduction of the articles found is rendered innocuous by its introduction later, it having been found valid. ■ .
We now review' the sufficiency of the evidence. The testimony reveals that the Sheriff’s Office, Polk County, had received information that a lotteiy was being operated by appellant and others. Acting on this information, two' Deputy Sheriffs concealed themselves near the horiie of appellant- at various times. About four o’clock on the morning of Saturday, April 12, 1952, they saw the defendant Robert Williams, alias “Bobo”, drive up to appellant’s home, go to the front door and hand a package to a woman who answered the door and state “this is Willie; give this to Mr. Joe Young.” A week later, about four o’clock on the morning of Saturday, April 19, 1952, the-defendant Williams again came to the home of appellant and on this occasion placed a package in appellant’s truck which was-parked nearby in the yard. - Williams was at that time and place arrested by the two Deputy Sheriffs. The package was opened and-found to contain lottery tickets, which, as explained 'by the Deputy Sheriff were on a lottery to be played that day, April 19th, as designated by the number “4” and “19” appearing thereon.
Williams was taken to the Sheriff’s office where later on that day he made a detailed confession, stating that he was á “pick-up man” and that it was his practice to pick up books of tickets from various sellers .and that a colored man named Cook had pointed out the appellant’s residence to him and had told him to leave the books with the appellant. ,
The testimony further shows that immediately after the arrest of Williams, the officers searched the appellant’s house and found several articles, including an adding machine (which was not placed in evidence), several grocery store charge,.pads, "gas pads” and a sales book, on one page of which .said- sales book were some numbers described by the witness as “Bolita numbers and the amount played on Bolita”. (The figures “7-13-51”, also appeared on this page but the witness could not say whether this number designated the date on which the lottery was played.) They also found what was described as a tally sheet and several adding machine tapes.
There was no testimony about any other act, omission, or statement on the part of the appellant, nor any connection shown -between the paraphernalia found in the house with the books which Williams left in the truck. In fact, since the witness explained that the numbers "4” and “19” appearing on the books in the package left by. defendant Williams indicated that they pertained to a lottery which was to be drawn on April 19th, it would seem equally apparent that the numbers “7-13-51” in the sales book found in Young’s house showed that it pertained to a lottery drawn on July 13, 1951, and, therefor®, had no connection -with the lottery tickets sold by the defendant “Bobo” Williams.
The jury Convicted the appellant under the sixth count of the information of possession of lottery paraphernalia and this Court has no jurisdiction to review his conviction under this count as same was a misdemeanor. But the mere possession of lottery paraphernalia does not make one guilty ipso facto of' all of the other offenses enumerated in the lottery statute. Furthermore, we have no statute in this State-making the mere possession of. lottery paraphernalia prima facie evidence of guilt of conducting a lottery, promoting a- lottery or having an interest in a certain lottery.
Obviously, therefore, if established at all, proof of the guilt of the appellant under the second, fourth and fifth counts must depend upon proof of a conspiracy or common Criminal design between the appellant and the defendant Williams, and upon the appellant’s consequent responsibility for the acts of Williams done in pursuance of such .conspiracy or common dcsigp. There is no proof direct or indirect of such a con *765 spiracy or of any acts done by the appellant pursuant to á common design or plan with Williams, and, therefore, appellant.cannot be held criminally responsible for the acts of the defendant Williams. •' ■
The defendant Williams did riot take the stand, but there were introduced into evidence two statements or declarations made by him which could very easily have iri-fluenced the jury in' considering the guilt of the appellant. Neither of these statements were admissible against the appellant.
Proof of overt acts or declarations by one in pursuance of a common purpose or design on the part of several to commit a crime may be given in evidence against all of the conspirators, but such acts ór declarations to be admissible, must be such only as were done and uttered during the pendency of the criminal enterprise and in furtherance of its objects. If they occur at a subsequent period, and aré merely narrative of past occurrences they" áre not admissible against any but the party making them. Jenkins v. State, 35 Fla. 737, 18 So. 182, 48 Am.St.Rep. 267; U. S. v. Hartwell, 26 Fed.Cas. page 196, No. 15, 318. See also Parties to Criminal Offenses by Dewey A. Dye, in Vol. 22, Florida Statutes Annotated, c. 776, page 98.
The confession made by Williams at the Sheriff’s office after the completion of the alleged offense was a mere narrative of past occurrence and clearly not admissible against the appellant.
The Court instructed the jury that it could not consider this-statement in'determining the guilt or innocence of the appellant as to the charges contained in the last five counts of the information but that it was “evidence against” the appellant when they were considering the first or conspiracy count of the information. This was error and certainly prejudicial to the appellant and when it is considered that the whole theory of proof of the appellant’s guilt depended upon this proof of conspiracy or concert of action‘between him and ■the defendant Williams,.it is apparent that the admission of the statement ‘ against the appellant even as to the first count was prejudicial.-
The declaration made by the defendant Williams when he handed the package to the lady on the early morning of April 12, 1953, saying “This is Willie; give this to Mr. Joe Young” would have been admissible as a declaration made in pursuance of a common, enterprise had there been at least prima facie proof'of such conspiracy.
The- general rule 'is that proof of conspiracy is necessary -to render evidence of conspirator’s acts and declarations admissible against other conspirators. Whether proof of córispiracy should precede adrnis-siori of supposed conspirators’ declarations ‘ is merely question of order of proof, which •is largely in the discretion of the Trial Court. Evidence of the acts and declarations of an alleged conspirator are admissible after testimony has been given which prima facie tends to prove the existence of a conspiracy or from which it might reasonably be inferred. Kight v. American Eagle Fire Ins. Co., 125 Fla. 608, 170 So. 664. Subsequent proof, however, of the existence of the conspiracy at the time the declarations were made is necessary before such a declaration can be considered against the alleged co-conspirator. Since there was no proof of the existence of any conspiracy or criminal concert between the appellant and the defendant Williams introduced prior to the admission of this declaration or. subsequent thereto, this declaration .should not have been considered ¡against the appellant.
We doubt that the jury would have found ’ the .appellant guilty', under these counts had they not considered these statements of the defendant Williams as proof of the appellant’s participation in the conspiracy or common plan. As we read the record, it is not a case in which a jury has rendered a verdict of guilty bn conflicting evidence, but a‘c'ase in which the jury has found the appellant guilty without any substantial evidence to warrant such a verdict.
“It is. a well established rule, in Florida that the .law presumes that a person charged with crime is innocent *766 and the presumption of innocency follows such a defendant charged with crime through each step in the trial until the presumption is overcome by. evidence establishing the guilt of the accused beyond a reasonable doubt. Likewise, it is a fundamental and widely recognized principle of criminal law that the burden of proof is on the State of. Florida to establish every essential or material allegation in the information beyond a reasonable doubt before a verdict of guilty may be. authorized.”
Pinder v. State, Fla., 53 So.2d 639. Therefore, we will not discuss the other questions which are presented by the appellant.
The judgment as to the guilt of the appellant under the second, fourth and fifth counts should be reversed.