407 So.2d 203 (1981)
Carmine Charles Robert FALCO, Appellant,
v.
STATE of Florida, Appellee.
No. 59538.
Supreme Court of Florida.
December 17, 1981.
*204 Paul R. Lipton of Leonard Robbins and Paul R. Lipton, P.A., North Miami Beach, for appellant.
Jim Smith, Atty. Gen. and Steven L. Bolotin, Asst. Atty. Gen., Miami, for appellee.
ADKINS, Justice.
This is an appeal from the Circuit Court of Dade County having been transferred to this Court from the Third District Court of Appeal. It involves a challenge to the constitutionality of Florida's manslaughter statute, section 782.07, Florida Statutes (1979), which appellant contends is vague and ambiguous when applied to the facts of this case, and, serves to deny him equal protection of the laws. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
The facts of the case are uncontroverted. A youth, Richard Brush, Jr., entered appellant's home from a side bathroom window without the consent of appellant and in the course of the commission of a burglary. (The day before his entry, appellant's home had been burglarized or had been attempted to be burglarized; and, indeed had been broken into and reported to the police a number of times in the immediate past.)
Brush had already illegally entered appellant's bathroom and was opening the bathroom door to move into the living room, when he was mortally wounded by a bullet from a .22 caliber rifle positioned on a chair in the living room. No one was present at the time of Brush's entry. To activate the gun, it would have been necessary to have entered into the residence in the same manner as did Brush and to thereafter move from one interior room to another. The rifle was not attached to any exterior door or window, nor to any main entry into appellant's home, and was so aimed that the bullet would enter the bathroom door at three feet, one inch above the floor and would exit three feet, two inches above the floor. Richard Brush, Jr., was five feet, seven inches tall.
The state of Florida does not have a specific trap gun law that would prohibit as *205 unlawful the acts complained of as against appellant. Therefore, appellant was charged by information with manslaughter pursuant to section 782.07, Florida Statutes (1979), which states:
The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Appellant filed a sworn motion to dismiss based on the alleged unconstitutionality of the statute as applied to the facts of this case, which motion was denied by the circuit court. Thereafter, appellant entered a plea of nolo contendere, specifically reserving his right to appeal the denial of his motion to dismiss. He was subsequently found guilty of the charge of manslaughter and sentenced to two years probation. In this appeal, appellant raises several points for our consideration.
Appellant initially contends that Florida's manslaughter statute is invalid as being vague and ambiguous when applied to the facts of this case. Conversely, he asserts that when the facts are applied to the statute, the statute was not violated by his acts. Appellant premises his argument on the language of section 782.07 which states it is not manslaughter if the acts fall within "lawful justification according to the provisions of chapter 776."
Section 776.012 of that chapter, entitled "Use of force in defense of person", and regarding use of deadly force provides in pertinent part:
However, he is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony.
Similarly, section 776.031, entitled "Use of force in defense of others" provides:
A person is justified in the use of force, except deadly force, against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on, or other tortious or criminal interference with, either real property other than a dwelling or personal property, lawfully in his possession or in the possession of another who is a member of his immediate family or household or of a person whose property he has a legal duty to protect. However, he is justified in the use of deadly force only if he reasonably believes that such force is necessary to prevent the imminent commission of a forcible felony.

(Emphasis added).
However, in referring to chapter 776, appellant points out that in 1975, the Florida legislature repealed section 776.021. Pursuant to that section a person would be justified in the use of deadly force to protect a dwelling only if:

He reasonably believes that such force is necessary to prevent the commission of a felony in the dwelling. (Emphasis added).
Appellant alleges the repeal of this statute left a "constitutional flaw or gap" which renders the charge against him invalid.
Appellant predicates his attack on the constitutionality of section 782.07 primarily on the decision of this Court in Bradley v. State, 79 Fla. 651, 84 So. 677, 679 (1920). The holding of Bradley with reference to this question, is that "before a man can be punished, his case must be plainly and unmistakenly within the statute." Appellant contends that because of the repeal of section 776.021, his acts committed in defending his dwelling are not specifically prohibited by section 782.07. Furthermore, relying on the United States Supreme Court's decision in Cramp v. Board of Public Instruction of Orange County, Florida, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961), appellant maintains the exercise of different interpretations following the repeal of section 776.021 exemplifies extraordinary ambiguities in the statutory language.
*206 At the outset, it is not clear from appellant's argument whether or not he is attacking the facial validity of section 782.07 as well as the validity of its application to the instant case. However, insofar as our determination of the former will necessarily limit our discussion of the latter, we will proceed as to both issues.
This Court has the duty, if reasonably possible, and consistent with constitutional rights, to resolve all doubts as to the validity of a statute in favor of its constitutionality. Brown v. State, 358 So.2d 16 (Fla. 1978). It is an immutable principle that "a statute which either forbids or requires the doing of an act in terms so vague that anyone of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Brock v. Hardie, 114 Fla. 670, 154 So. 690, 694 (1934); see also Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977); State v. Llopis, 257 So.2d 17 (Fla. 1971). This Court adopted that definition as its own and designated it as the test approved by the United States Supreme Court.
Our decisions under that principle, however, are necessarily premised on the issue of the constitutionality vel non of a specific statute. In contrast, appellant apparently premises his constitutional challenge not on an existing statute, but on the ramifications of a non-existing one. The repeal of section 776.021 allegedly creates a greater right to use deadly force to protect real property, other than a dwelling, pursuant to section 776.031 and to defend against the threat of great bodily harm or the imminent commission of a forcible felony pursuant to section 776.012, with no concomitant right to likewise defend a dwelling. Accordingly, appellant contends that he is forced to guess at the meaning of section 782.07, Florida's manslaughter statute, in contravention of the rule in Cramp and in violation of the first essential of due process of law. However, a careful examination of the Supreme Court's decision in Cramp will show that it is not authority for appellant's argument.
Cramp v. Board of Public Instruction of Orange County, Florida, involved an action by a school teacher challenging the constitutionality of a loyalty oath required by section 876.05, Florida Statutes. The Supreme Court held the statute to be unconstitutionally vague and a denial of due process of law. In so holding, the Court sought to dispel the unconstitutional evil embodied in the vague statutory language. Nothing in its decision suggests that the rule espoused by the Supreme Court, the same as that espoused by this Court in Smith v. State, 237 So.2d 139 (Fla. 1970), would necessarily include an unconstitutional gap created by the repeal of a statute. Under those circumstances, as under the instant case, there are no "vices inherent in an unconstitutionally vague statute", simply because there exists no statute. In any event, our decision in Cobb v. State, 376 So.2d 230 (Fla. 1979), may well be dispositive of this issue. Cobb involved a vagueness challenge against section 782.11, Florida Statutes, which makes it a felony to "unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act, or after such attempt shall have failed ..." In upholding the validity of that statute we stated:
When the words "unnecessarily kill" in section 782.11 are considered together with the remainder of chapter 782, they are sufficiently precise to meet the constitutional standard for definiteness in penal statutes. Homicides committed while resisting another's unlawful act are punishable only if not excusable, as provided in section 782.03, Florida Statutes (1975), or if not justifiable, as provided in section 782.02 or chapter 776, Florida Statutes (1975). Read with these provisions, section 782.11 is not impermissibly vague.

Id. at 231 (emphasis added). Likewise, we hold that section 782.07, when read in conjunction with chapter 776 or the other provisions of chapter 782, is neither vague nor ambiguous, nor would men of common intelligence necessarily have to guess at its *207 meaning or differ as to its application. Therefore, we find that section 782.07 is constitutional and affirm the judgment of the circuit court.
We next consider appellant's argument that the statute is unconstitutional as applied to him. The state argues in its brief that this Court's recent decision in a similar case, Vernold v. State, 376 So.2d 1166 (Fla. 1979), precludes such a challenge subsequent to a plea of nolo contendere. In Vernold the defendant challenged the validity of Florida's disorderly intoxication statute, section 856.011, by a motion to dismiss, which motion was denied by the trial court. The defendant subsequently entered a plea of nolo contendere reserving the right to appeal the denial of his motion. In upholding the constitutionality of section 856.011 we stated:
We need not consider the defendant's argument that the statute is unconstitutional as applied to him. Defendant's plea of nolo contendere, for the purposes of this prosecution, admitted the facts alleged in the information. Vinson v. State, 345 So.2d 711 (Fla. 1977). He may not now challenge these facts as he is attempting to do in this appeal. Martinez v. State, 368 So.2d 338 (Fla. 1978).
Id. at 1167.
Nevertheless, this Court has approved the practice of reserving for appeal dispositive legal issues after a plea of nolo contendere. Such a procedure expedites resolution of the controversy and narrows the issues to be resolved. State v. Ashby, 245 So.2d 225, 228 (Fla. 1971). Recently, in Brown v. State, 376 So.2d 382, 385 (Fla. 1979), we held that for purposes of an Ashby nolo plea, a dispositive legal issue would be, inter alia, the constitutionality of a controlling statute. Under this rule we emphasized the wide discretion resting with the trial judge in accepting or rejecting a nolo plea based upon his perception of the dispositive nature of the legal issue reserved for appeal.
Vernold does not stand for the strict proposition that once one pleads nolo contendere and reserves the right to appeal the issue of constitutionality, he can never challenge on appeal the constitutionality of a statute as applied. The present case differs factually from Vernold.
In the present case the facts serving as the basis for violation of section 782.07 are uncontroverted and clear. Falco argues that the application of this statute to the uncontroverted facts violates his rights to due process and equal protection of the laws.
In Vernold, on the other hand, defendant attempted to challenge the facts on appeal as well as the constitutionality of the statute as applied to these controverted facts.
This Court has made it clear that questions of fact cannot be reserved for appeal upon a plea of nolo contendere. Martinez v. State, 368 So.2d 338 (Fla. 1978). But a question of law dispositive of the cause may be reserved for appeal. Brown v. State, 376 So.2d 382 (Fla. 1979); Vinson v. State, 345 So.2d 711 (Fla. 1977).
Here the constitutionality of section 782.07 as applied to the uncontroverted facts is a question of law dispositive of the cause, which may properly be resolved in this appeal.
Finally, appellant challenges the repeal of section 776.021 on the basis of equal protection. It is contended that the failure of the legislature to provide for the right to use deadly force to protect the dwelling creates an "unequal, arbitrary, capricious and unreasonable classification... ." This argument, however, is based on the faulty premise that a property owner has the "right", pursuant to section 776.031, to use deadly force to protect his real property, other than his dwelling, from the imminent commission of a forcible felony, or that a person has the "right", pursuant to section 776.012, to use deadly force to protect himself or another from imminent death or great bodily harm or the imminent commission of a forcible felony, but that an owner of a dwelling has no similar "right" to defend the dwelling. The fault necessarily lies in the fact that there is no such alleged right involved. Rather, the statutes mentioned *208 merely devolve a "privilege" upon a property owner, one not to be abused and therefore one which is necessarily limited. The limitation is predicated on the term "justifiable", and in either of the situations presented by the statutes, the use of deadly force to protect person or property is justifiable only if there is a reasonable belief that such force is necessary. Consequently, the "right" requisite to an equal protection challenge is conspicuously absent. McDaniel v. Board of Public Instruction, 39 F. Supp. 638 (N.D.Fla. 1941); Caldwell v. Mann, 157 Fla. 633, 26 So.2d 788 (1946); Riley v. Lawson, 106 Fla. 521, 143 So. 619 (1932); State ex rel. Spencer v. Bryan, 87 Fla. 56, 99 So. 327 (1924); State ex rel. Lamar v. Jacksonville Terminal Co., 41 Fla. 363, 27 So. 221 (1899).
Nevertheless, there is provision made in the Florida Statutes for the protection of the dwelling. Section 782.02, entitled "Justifiable use of deadly force" states:
The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or upon or in any dwelling house in which such person shall be.
Furthermore, Florida has long recognized the venerable "castle doctrine" which stands for the proposition that a person's dwelling house is a castle of defense for himself and his family, and an assault on it with intent to injure him or any lawful inmate of it may justify the use of force as protection, and even deadly force if there exist reasonable and factual grounds to believe that unless so used, a felony would be committed. Peele v. State, 155 Fla. 235, 20 So.2d 120 (1944); Russell v. State, 61 Fla. 50, 54 So. 360 (1911); Wilson v. State, 30 Fla. 234, 11 So. 556 (1892); Harris v. State, 104 So.2d 739 (Fla. 2d DCA 1958); 16 Fla.Jur.2d Criminal Law § 1077 (1979).
However, appellant contends that it is inherently unreasonable to demand the presence of a person to justify the use of deadly force in defense of his dwelling, (see section 782.02, Florida Statutes (1979)), but not in defense of his real or personal property. We disagree with appellant's argument for two reasons. First, appellant overlooks the fact that section 776.031, although expressly excluding the dwelling in reference to the protection of real property, can be read to include the dwelling in reference to the protection of personal property. It stands to reason that most, if not all, personal property would be found within the dwelling. Therefore, in light of section 782.02 and the castle doctrine, and our construction of section 776.031, appellant's argument that the owner of a dwelling has been arbitrarily and unreasonably denied equal protection is wholly without merit.
Second, appellant erroneously presumes that the use of a deadly mechanical device, such as a trap gun, in defense of any property is a justifiable use of force based on a reasonable belief of its necessity. We agree with the state's argument that the use of such a device is fundamentally unnecessary and unjustifiable.
A trap gun or spring gun is absolutely incapable of exercising discretion or reason. Rather, it sentences its victim to death or great bodily injury in a split second explosion of deadly force. Such arbitrary brutality should necessarily be prohibited under any circumstance. In reference to this question, we cite with approval the statement of the California Supreme Court in People v. Ceballos which reads:
Allowing persons, at their own risk, to employ deadly mechanical devices imperils the lives of children, firemen and policemen acting within the scope of their employment, and others. Where the actor is present, there is always the possibility he will realize that deadly force is not necessary, but deadly mechanical devices are without mercy or discretion. Such devices "are silent instrumentalities of death. They deal death and destruction to the innocent as well as the criminal intruder without the slightest warning. The taking of human life [or infliction of great bodily injury] by such means is brutally savage and inhuman." (See State v. Plumlee, supra, [177 La. 687] 149 So. 425, 430.)
*209 12 Cal.3d 470, 116 Cal. Rptr. 233, 236, 526 P.2d 241, 244 (1974) (emphasis added).
The facts of Ceballos are similar to those in the instant case in many respects. In that case, two teenaged boys attempted to burglarize the defendant's home. When one of the boys removed the lock on the garage door with a crowbar and subsequently pulled the door outward, he was shot in the face, and wounded, by a bullet from a trap gun. The defendant had set up the trap gun after a previous burglary and an apparent attempted burglary. California did not have a statute specifically dealing with trap guns; however, by statute, homicide was justifiable "[w]hen committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony." The Court noted the common law rule that killing or use of deadly force to prevent a felony was justifiable only if the offense was "a forcible and atrocious crime." Burglary, however, was not considered by the Court to "reasonably create a fear of great bodily harm." The Court concluded that the defendant was not justified in shooting the youth, by means of a trap gun, in order to prevent him from committing burglary.
Although a "forcible felony" includes burglary in Florida (section 776.08, Florida Statutes), we must agree with the observation made by the California Court in Ceballos, which was:
A defendant is not protected from liability merely by the fact that the intruder's conduct is such as would justify the defendant, were he present, in believing that the intrusion threatened death or serious bodily injury... . There is ordinarily the possibility that the defendant, were he present, would realize the true state of affairs and recognize the intruder as one whom he would not be justified in killing or wounding.

at 116 Cal. Rptr. 238, 526 P.2d 246. (Emphasis added) (citations omitted).
The record indicates that appellant was employed as a child care worker for the Dade County Youth Services prior to the incident charged against him. Appellant had also been affiliated with the Boy Scouts of America in various different positions of authority and several witnesses testified as to his fine character and deep involvement in the community. Considering appellant's laudable credentials, and his extensive training, we observe, as did the California Supreme Court, the strong possibility that he would not have employed deadly force to protect himself against Brush's intrusion had he been present. Therefore, we hold that the mechanical device used by appellant was unjustifiable and unnecessary.
In conclusion, we reiterate our position that section 782.07, Florida's manslaughter statute, is constitutional as applied and does not deny appellant equal protection of the laws.
The judgment of the trial court is affirmed.
SUNDBERG, C.J., and BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.